UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| IRON MOUNTAIN RECYCLING, LLC <br> Plaintiff <br><br> v. <br><br> SOUTHERN RECYCLING, LLC and <br> EUROPEAN METAL RECYCLING, LTD. <br> Defendants | § <br> § Civil Action No. _____ <br> § <br> § Judge _____ <br> § <br> § Magistrate Judge _____ <br> § <br> § |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff, Iron Mountain Recycling, LLC brings this civil action to obtain relief against the named defendant, and alleges as follows:

### Jurisdiction

1. This is a complaint for treble damages and injunctive relief under the antitrust laws of the United States, 15 USC § 1, *et. seq.*

2. This Court has personal jurisdiction of the action under 15 USC §§ 15, 22, and 26 because the action is brought as a result of defendants' violations of the Sherman Act (15 U.S.C. §§ 1, 2), the Clayton Act (15 U.S.C. § 14) and the Robinson-Patman Act (15 U.S.C. § 13), and as further provided by 28 U.S.C. §§ 1331 and 1337(a).

3. This Court has supplemental jurisdiction over Plaintiff's claims under Louisiana state law as provided by 28 U.S.C. § 1367(a).

## The Parties

4. Plaintiff, Iron Mountain Recycling, LLC ("Iron Mountain" or "Plaintiff") is a corporation organized and operating under the laws of the State of Texas with its principal place of business in Gatesville, Texas.

    a. Plaintiff is an owner and operator of three recycling facilities in Louisiana and Texas. Plaintiff purchases ferrous and nonferrous "scrap" metal from the public at large. Plaintiff currently operates two such recycling facilities located in the Western District of Louisiana: one in Many, Louisiana, and one in DeQuincy, Louisiana.

    b. Both of Plaintiff's Louisiana recycling facilities purchase recycled metal materials from individuals and businesses within a 30-40 mile radius of each of its recycling facilities in Many, Louisiana and DeQuincy, Louisiana.

    c. Throughout 2011, after purchasing recycled metal scrap at its facilities from the public, Plaintiff processed the material and then delivered and sold it to defendant's recycling facility in Lake Charles, La. From there, defendants transported the same by water to defendants' shredder facility in Port Allen, Louisiana. Shredders such as the one operated by defendants in Louisiana are extremely expensive to own and operate and act as a barrier to entry into the metal shredding/processing industry. Besides defendants' shredder in Port Allen, Louisiana, the next closest shredding facility to Plaintiff's Louisiana recycling facilities is located in the Houston, Texas area.

    d. Plaintiff's revenues in 2011 exceeded Ten Million Dollars ($10,000,000.00). As of the end of the fourth quarter of 2011, Plaintiff's net worth was approximately Six Million Dollars ($6,000,000.00).

5. Defendant Southern Recycling, LLC ("Southern") is a Louisiana limited liability company conducting business in Louisiana and having its principal place of business located at 902 Julia Street, New Orleans, Louisiana 70113. Southern operates recycling facilities in Lake Charles, Louisiana, Lafayette, Louisiana, and at other places in Louisiana. Southern uses the channels of interstate commerce to transport recycled metal materials to its shredder processing centers.

    a. Southern is the self-described "*premier metal recycling operation in the U.S. Gulf Coast region.*" Established and headquartered in New Orleans since 1900, the company currently operates a network of full-service recycling facilities from Lake Charles, Louisiana to Tampa, Florida. In 2006, Southern was acquired by the UK-based multinational, European Metal Recycling, Ltd. (EMR).

    b. Southern has an estimated 80% market share of metal recycling operations in the U.S. Gulf Coast Region.

    c. Southern maintains offices and facilities and transacts business within the Western District of Louisiana.

6. Defendant European Metal Recycling, Ltd. ("EMR") is a foreign corporation domiciled in the United Kingdom. It is the sole owner of Southern. EMR uses the channels of interstate and international commerce to transport recycled metal materials.

    a. EMR is a self-described global leader in metal recycling, employing 3,500 people and operating 150 locations around the world, including the Southern facilities in Louisiana.

    b. EMR states in its advertising that it buys from "anyone who produces scrap metal. This includes the general public, other scrap metal merchants, … to name but a few." It further states to its prospective sellers that "While it will feel like you're dealing with a local independent, you're guaranteed the unshakeable reliability of a large global organization."

    c. EMR further states that it will buy "any scrap metal from any source", and guarantees that it is always highly competitive on price compared to other recyclers.

**Facts**

7. Beginning on February 22, 2012 and continuing to the present, the defendants have engaged in an unlawful combination and conspiracy to restrain and monopolize interstate trade and commerce. More specifically, on February 22nd, 2012, Mr. Chip Hunter, an employee and manager of Southern, had the following email exchange with Mr. Ed Lerma of Iron Mountain:

*"Ed be advised that I've closed pricing on all grades for Iron Mountain. We will no longer accept your material."*

Ed Lerma replied: *"Chip, we have been a good supplier of material to Southern Scrap / EMR and if cash flow is the problem, we can accept 30 day terms. If you need approval from higher authority and need us to wait a day or two, please let me know. I have a lot of material to sell."*

4

> To which Mr. Chip Hunter of Southern replied simply, *"Really? Is that why you think we made this decision?"* (See EXHIBIT A, email exchange between Southern and Iron Mountain, attached hereto and made a part hereof).

8. The inference from Mr. Hunter's statement is very clear. As the largest buyer of scrap metal in the Gulf Coast region, Southern's boycott of Iron Mountain was (and is) intended to eliminate Iron Mountain as a competing purchaser of scrap material in Louisiana.

9. Since February 22, 2012 the defendants have failed to purchase scrap metal from Plaintiff, in effect boycotting Plaintiff by refusing to deal with Plaintiff.

10. Defendants have no valid reason for refusing to purchase materials from Plaintiff.

11. As a result of this illegal boycott, Iron Mountain was forced to sell its material to the next closest purchaser with a shredder. This purchaser is located near Houston, Texas. As a result of the added time and expense associated with having to ship its purchased scrap material an additional 200 plus miles (round trip) from each of its Louisiana locations, Iron Mountain began immediately suffering losses in excess of $30,000 ***per day***. These losses are not just the result of additional fuel, truck maintenance and driver expenses, but also the result of not being able to physically deliver all of the material Iron Mountain is purchasing from sellers. Beginning on February 22, 2012 and continuing to this day, Iron Mountain has been placed in the precarious position of only being able to transport less than half of the material it was buying at its Louisiana locations.

12. Although Iron Mountain has purchased additional trucks in an effort to mitigate its damages, it was still forced to close its Louisiana locations on March 15, 2012 (roughly 3 weeks after Defendants' boycott began). Plaintiff has since reopened its locations in Louisiana at great loss to plaintiff in an attempt to retain its business goodwill. These closures were necessary so that Iron Mountain could clear all of the excess scrap material off of its yards and receive income from sales in Houston. Rather than being able to make 3 runs per day per truck to Southern's location in Lake Charles, Iron Mountain can only make one run per day per truck to Houston.

13. Prior to the defendants' actions and unlawful boycott of Plaintiff, Plaintiff was a reputable supplier of scrap material that had provided millions of dollars of product to defendant.

14. As a direct result of defendants' actions which caused Plaintiff to close its scrap facilities in Louisiana, approximately 200 members of the scrap selling public per day that would otherwise be selling scrap to Iron Mountain in its Dequincy and Many, Louisiana locations have been forced to transport their scrap material (approximately 140 tons per day) to more remote locations in the Gulf Coast region. These members of the public have been forced to drive further and wait longer to offload material at Southern's facilities in Louisiana.

15. Defendants' acts were committed with the purpose and effect of preventing, reducing, and limiting competition in the market for scrap metal in the Gulf Coast region, and constitute an attempt to monopolize, and a combination with others to monopolize, the market for scrap metal in the Gulf Coast region.

16. Plaintiff is a business competitor of defendants.

17. Defendants' actions are unfair, oppressive, and unscrupulous and have resulted in damage to Plaintiff, to competition, to consumers, and to the market.

18. Defendants' actions constitute an unreasonable restraint of trade.

19. As a direct result of the unlawful acts by the defendants as described above, the Plaintiff has already suffered, and will continue to suffer, substantial damages.

20. The Plaintiff has no adequate remedy at law.

## Violations Alleged

### Count One

21. Plaintiff realleges each and every allegation of paragraphs 1-20 of this Complaint and incorporates them by reference.

22. The actions of defendants have had the effect of restricting competition in southwestern Louisiana, and, therefore, unreasonably restrains trade and commerce in violation of Sections 1 of the Sherman Act, 15 U.S.C. § 1.

### Count Two

23. Plaintiff realleges each and every allegation of paragraphs 1-22 of this Complaint and incorporates them by reference.

24. The actions of defendants have had the effect of restricting competition in the recycling of scrap metals in southwestern Louisiana.  Such conduct was undertaken with specific intent to achieve monopoly power.  Defendants conduct, therefore, constitutes an unlawful conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

### Count Three

25. Plaintiff realleges each and every allegation of paragraphs 1-24 of this Complaint and incorporates them by reference.

26. The defendants have unlawfully discriminated against plaintiff in the purchase (or refusal thereof) of commodities of like grade and quality with the intent to lessen competition or to create a monopoly in a line of commerce, in violation of 15 USC § 13, commonly known as the Robinson-Patman Act.

### Count Four

27. Plaintiff realleges each and every allegation of paragraphs 1-26 of this Complaint and incorporates them by reference.

28. The actions of defendants in refusing to use or deal in the goods and wares of Plaintiff, their competitor, has had the effect of substantially lessening competition and to create a monopoly, in violation of 15 U.S.C. § 14.

### Count Five

29. Plaintiff realleges each and every allegation of paragraphs 1-28 of this Complaint and incorporates them by reference.

30. The foregoing acts by defendants constitute violations of federal law and also constitute a violation of the corresponding provisions of the Louisiana antitrust law, La. R.S. 51:122-125, and 129.

### Count Six

31. Plaintiff realleges each and every allegation of paragraphs 1-30 of this Complaint and incorporates them by reference.

32. The foregoing acts by defendants constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of its business in violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1405 and 1409.

## Jury Demand

Plaintiff demands trial by jury on all issues so triable.

## Prayer

Plaintiff requests the following relief:

A. That the court issue a temporary restraining order, a preliminary injunction and a permanent injunction restraining defendants from:

   a. Refusing to purchase scrap metal material from Iron Mountain on customary and non-discriminatory terms and conditions; and

   b. Imposing or attempting to impose any further unlawful or discriminatory restraints or requirements on plaintiff;

B. That Plaintiff recover from defendants treble damages;

C. That Plaintiff recover its costs of suit;

D. That Plaintiff recover its reasonable attorneys' fees; and

E. That Plaintiff be granted all other proper relief.

    Respectfully submitted,

    s/Michael D. Skinner
    Michael D. Skinner (La. Bar No. 12118)
    Skinner Law Firm, L.L.C.
    Chase Tower
    600 Jefferson Street, Suite 810
    Lafayette, LA 70501
    P: (337) 354-3030
    F: (337) 354-3032
    Email: mike@law.glacoxmail.com
    Attorneys for Iron Mountain Recycling, LLC